A97A0148. KLUGE v. RENN.
A97A0505. DANIELS et al. v. KLUGE.
A97A0506. TAYLOR v. KLUGE.
(487 SE2d 391)

ANDREWS, Chief Judge.

Mary Kluge's divorce action against Stephen Renn concluded with the entry of a consent divorce decree setting forth a settlement agreement between the parties. Thereafter, Kluge brought the present abusive litigation action pursuant to OCGA § 51-7-80 et seq. against Renn, Tony Taylor (Renn's attorney in the divorce action), Jerry A. Daniels, P. C. (the law firm that employed Taylor), and Jerry A. Daniels, individually (a member of the law firm of Jerry A. Daniels, P. C.). Kluge asserted that Renn's counterclaim against her in the divorce action alleging adultery was false and was brought with malice and without substantial justification. The trial court granted Renn's motion for summary judgment and denied summary judgment motions brought by Taylor, Jerry A. Daniels, P. C., and Daniels, individually. In Case No. A97A0148, Kluge appeals from the grant of summary judgment in favor of Renn. We granted interlocutory appeals to consider the trial court's denial of summary judgment to the remaining defendants. In Case No. A97A0505, Daniels, individually, and Jerry A. Daniels, P. C., appeal from the denial of their motions for summary judgment. In Case No. A97A0506, Taylor appeals from the denial of his motion for summary judgment.

*Case No. A97A0148*

1. Kluge contends the trial court erred by ruling that the settlement she entered into with Renn in the divorce action precluded her subsequent abusive litigation claim against Renn.

On March 3, 1995, during the pendency of the divorce action, Kluge sent a letter to Taylor providing notice pursuant to OCGA § 51-7-84 (a) to Taylor and his client, Renn, that she considered the

adultery counterclaim to constitute abusive litigation and that, unless it was withdrawn, she intended to assert a claim for abusive litigation against both of them after final termination of the divorce action. See *Owens v. Generali — U. S. Branch,* 224 Ga. App. 290, 292 (480 SE2d 863) (1997). Renn later withdrew the adultery allegation in an amendment to his counterclaim filed on April 28, 1995. The divorce case was set for trial in June 1995.

The trial court's summary judgment order in the present case shows that, on the day the divorce case was set for trial, the parties settled all the issues in the case, except for certain contract issues which were submitted to the jury, and except for the issue of attorney fees sought by both parties in their original pleadings, which was reserved for later resolution by the trial court. After the contract issues were resolved by trial, a consent decree signed and approved by counsel for both parties was entered by the trial court on June 16, 1995. The consent decree incorporated all the terms of the divorce and recited that it was entered pursuant to "an agreement among [the parties] to settle all issues in reference to this case." As to the only issue reserved for later resolution, the consent decree gave the parties 15 days to submit any request for attorney fees sought in the original pleadings.

We agree with the trial court that entry of the consent decree incorporating the parties' settlement of the case barred Kluge's subsequent action against Renn for abusive litigation pursuant to OCGA § 51-7-80 et seq. As the trial court noted in its order granting summary judgment, we reached this conclusion in similar cases where a party sought attorney fees and expenses for frivolous litigation under OCGA § 9-15-14 after the case giving rise to the claim was settled.

In *Hunter v. Schroeder,* 186 Ga. App. 799 (368 SE2d 561) (1988), we held that a consent order dismissing an action with prejudice and reciting that the dismissal embodied the parties "settlement of all claims in this action" barred a subsequent frivolous litigation claim pursuant to OCGA § 9-15-14. We held that, after final termination of a case, the legislature did not intend to authorize one party to seek recovery of frivolous litigation expenses under § 9-15-14 against another party where the party seeking the recovery had induced the final termination by entering into a settlement of all claims in the case. Id. at 800. We concluded that the settlement, "include[d] any possible claim that might otherwise have been allowed under OCGA § 9-15-14 on the basis that [a claim or defense by a party in the prior case] lacked substantial justification." Id. at 800-801. Similarly, in *Ingram v. Star Touch Communications,* 215 Ga. App. 329 (450 SE2d 334) (1994), the party seeking attorney fees under OCGA § 9-15-14 after final termination of the case had induced a dismissal with prejudice by entering into a settlement of the case. We found that, in

the absence of any indication that the § 9-15-14 claim had been reserved by the settling parties, the settlement eliminated a party's subsequent claim for frivolous litigation expenses under § 9-15-14. Id. at 330. Compare *Forest Lakes Home Owners Assn. v. Green Indus.,* 218 Ga. App. 890 (463 SE2d 723) (1995).

The abusive litigation remedy created in OCGA § 51-7-80 et seq. serves a purpose similar to the procedures in OCGA § 9-15-14 for the collection of attorney fees and expenses of litigation for frivolous actions and defenses. See *Hutchison v. Divorce & Custody Law Center &c., P. C.,* 207 Ga. App. 421, 423 (427 SE2d 784) (1993). Accordingly, we find that the rationale applied to recovery under § 9-15-14 after a case has been settled also applies to recovery under § 51-7-80 et seq. after settlement. Since the consent decree embodied a settlement of the case by the parties, and there is nothing indicating reservation of the claim for abusive litigation, the trial court correctly concluded that the settlement barred Kluge's abusive litigation claim against Renn.

### Case No. A97A0506

2. Taylor contends the trial court erred by denying his motion for summary judgment because the adultery counterclaim against Kluge that he filed on behalf of Renn was privileged under OCGA § 51-5-8.

OCGA § 51-5-8 provides that pleadings filed in a case, which are pertinent and material to the relief sought, even if they are not legally sufficient to obtain the relief sought, and even if they are false and malicious, are not subject to a claim for libel. *Stewart v. Walton,* 254 Ga. 81, 82 (326 SE2d 738) (1985). The privilege established under OCGA § 51-5-8 does not bar a claim for abusive litigation pursuant to OCGA § 51-7-80 et seq. *Phillips v. MacDougald,* 219 Ga. App. 152 (464 SE2d 390) (1995); see *Alcovy Properties v. MTW Investment Co.,* 212 Ga. App. 102 (441 SE2d 288) (1994).

3. There is no merit to Taylor's contention that he was entitled to summary judgment solely because Kluge failed to file a written response to his motion within the time required by Superior Court Rule 6.2. By failing to file a timely response, Kluge waived her right to present evidence in opposition to Taylor's motion, but this did not necessarily entitle Taylor to summary judgment. *Ackerman & Co. v. Lostocco,* 216 Ga. App. 242, 244 (454 SE2d 792) (1995). Summary judgment is granted only when it affirmatively appears from the pleadings and the evidence that the movant is entitled to prevail. Id. Moreover, even if the trial court considered evidence which was not timely filed, Taylor did not object, so this provides no basis for reversal. *Wilson v. Valentine,* 199 Ga. App. 244, 245 (404 SE2d 600) (1991).

4. Taylor contends the facts demonstrate that he did not engage

in abusive litigation as Renn's attorney pursuant to OCGA § 51-7-80 et seq. because he acted without malice, with substantial justification, and in good faith in filing the adultery counterclaim based on facts supplied by Renn, in pursuing discovery in further support of the claim, and in subsequently withdrawing the adultery allegation after receiving responses to the discovery.

To establish a claim by a spouse for divorce on the ground of adultery requires evidence that, during the marriage, the spouse against whom the allegation is made voluntarily had sexual intercourse with a person other than his or her spouse. OCGA §§ 19-5-3 (6); 16-6-19. The record reflects that the adultery counterclaim was filed by Taylor on behalf of Renn after Renn told Taylor, during the pendency of the divorce action, that he suspected Kluge was having an affair with another man. Taylor stated by affidavit in support of his motion for summary judgment that Renn told him he was suspicious because he and Kluge had separated after only three months of marriage, that Kluge had discontinued sexual relations with him after six weeks of marriage, that during the marriage Kluge continued a close relationship at work with a man who had sent her flowers and a diamond tennis bracelet during the time he (Renn) and Kluge were engaged to be married, that he had received reports that Kluge and the man spent an unusual amount of time together, that during the marriage Kluge went on two weekend trips refusing to tell him where she was going or how to contact her, and that when she got back from one of the trips he found a negligee he had never seen before in the trunk of her car in a "Frederick's of Hollywood" bag and she refused to discuss it.

Taylor stated that he relied on these statements by Renn as support for filing the adultery counterclaim and accompanying discovery regarding the counterclaim. In a deposition taken during the pendency of the divorce action and in another deposition taken in the present action, Renn confirmed that, sometime after his initial answer and counterclaim in the divorce action had been filed, he told Taylor about the events that raised his suspicions that Kluge was having an affair. He also confirmed that he had no personal knowledge nor had anyone told him that Kluge had engaged in an adulterous or romantic relationship with someone else during the marriage.

The record shows that on March 3, 1995, the same day the adultery counterclaim was filed, Taylor also filed interrogatories, requests for admissions, and requests for production seeking information and admissions to support the adultery allegation, including Kluge's whereabouts on one of the weekend trips. Kluge responded to the interrogatories and requests for admissions in about a week, admitting that she knew the man at issue through a business relationship but denying that she had any kind of adulterous or romantic

relationship with him. Kluge also provided the name and location of a girl friend with whom she stayed on the weekend at issue. On March 3, 1995, at the time she received the counterclaim and responded to the discovery, Kluge also sent Renn and Taylor the notice required pursuant to OCGA § 51-7-84 (a) stating that she considered the adultery counterclaim to be abusive litigation and that, unless it was withdrawn, she would bring an abusive litigation claim against both of them after the divorce action was terminated. Kluge responded to Renn's production request related to the adultery allegation at Renn's deposition taken on April 14, 1995. After Renn testified during the deposition that he had discovered no further support for the adultery allegation, Taylor stated on the deposition record that he and his client did not intend to further pursue the adultery allegation and that an amendment would be filed to the counterclaim deleting the adultery claim. On April 28, 1995, Taylor filed an amendment to Renn's counterclaim deleting the allegation of adultery.

OCGA § 51-7-81 provides as follows: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." In this context, a " '[c]ivil proceeding' includes any action, suit, proceeding, counterclaim, cross-claim, third-party claim, or other claim at law or in equity." OCGA § 51-7-80 (1). " 'Malice' means acting with ill will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." OCGA § 51-7-80 (5). " 'Without substantial justification,' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that such civil proceeding, claim, defense, motion, appeal, or other position is: (A) Frivolous; (B) Groundless in fact or in law; or (C) Vexatious." OCGA § 51-7-80 (7).

As Renn's attorney in the divorce action, Taylor is a person within the meaning of OCGA §§ 51-7-81 and 51-7-80 (6) who could be liable for abusive litigation for taking an active part in the initiation, continuation, or procurement of the adultery counterclaim filed on behalf of Renn against Kluge if in so doing Taylor acted with malice and without substantial justification. See *Ibrahim v. Talley & Assoc., P. C.*, 214 Ga. App. 609, 611-612 (448 SE2d 707) (1994); *Kirsch v. Meredith*, 211 Ga. App. 823 (440 SE2d 702) (1994). OCGA § 51-7-82 (b) provides, however, that "[i]t shall be a complete defense to any claim for abusive litigation that the person against whom a claim of abusive litigation is asserted acted in good faith; provided, however, that

good faith shall be an affirmative defense and the burden of proof shall be on the person asserting the actions were taken in good faith." Pursuant to OCGA § 51-7-80 (4) " 'Good faith,' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that to the best of a person's or his or her attorney's knowledge, information, and belief, formed honestly after reasonable inquiry, that such civil proceeding, claim, defense, motion, appeal, or other position is well grounded in fact and is either warranted by existing law or by reasonable grounds to believe that an argument for the extension, modification, or reversal of existing law may be successful."

In response to Kluge's abusive litigation claim, Taylor asserted the affirmative defense of good faith in his answer and in his motion for summary judgment. Taylor contends that, based on the information given to him by Renn, he acted in good faith as Renn's attorney in initiating the adultery counterclaim, in continuing the counterclaim while pursuing discovery related to it, and in subsequently withdrawing the adultery allegation after discovery developed nothing further in support of the claim.[1] As defined under OCGA § 51-7-80 (4), the "good faith" defense asserted by Taylor in reference to the adultery counterclaim "means that to the best of [Taylor's] knowledge, information, and belief, formed honestly after reasonable inquiry, [the adultery counterclaim was] well grounded in fact and [thus] warranted by existing law. . . ." Although good faith is defined in subjective terms to the extent it refers "to the best of a person's or his or her attorney's knowledge, information, and belief, formed honestly . . ." an attorney cannot establish that he or she acted in good faith by simply asserting a subjective, honest belief that a claim was well grounded in fact and warranted by existing law or by reasonable grounds to believe that an argument for changing the law may be successful. The "reasonable inquiry" requirement of § 51-7-80 (4) is an objective good faith requirement which qualifies the definition and imposes a duty on attorneys to conduct a reasonable inquiry into the facts and law prior to initiating, continuing, or procuring a claim on behalf of a client. Accordingly, the applicable standard is what would be objectively reasonable for a competent attorney under the circumstances. See 5A C. Wright & A. Miller, Federal Practice & Procedure, § 1335 (2nd ed. 1990) (discussing the standard of "reasonableness under the circumstances" used to measure attorneys' compli-

---

[1] Although Taylor's enumeration of error and argument assert he took these actions without malice and with substantial justification, it is apparent from a review of the record that the essence of Taylor's contention is that he was entitled to summary judgment for acting in good faith. Where the error sought to be asserted is apparent from a review of the record, we will consider it even though it is not clearly enumerated. OCGA § 5-6-48 (f).

ance with similar statutory language in Rule 11 of the Federal Rules of Civil Procedure).

The fact that the adultery counterclaim, when filed, was not supported by facts sufficient to establish the claim does not demand a finding that Kluge has a viable abusive litigation claim against Taylor for filing it as Renn's attorney. An attorney need not under all circumstances have enough facts to establish a claim prior to filing. The goal of OCGA § 51-7-80 et seq. is to deter and compensate for damages caused by the initiation, continuation, or procurement of abusive, frivolous, or groundless claims, not to penalize claims which have some arguable support but need discovery or investigation to be developed. Compare *Ferguson v. City of Doraville*, 186 Ga. App. 430, 434-437 (367 SE2d 551) (1988). It may be reasonable under the circumstances for an attorney, after satisfying the reasonable inquiry requirement, to file a claim on behalf of a client based on facts which may not be sufficient to establish a triable issue, but do supply at least a colorable inference in support of the claim, and then pursue discovery or investigation to confirm whether or not a factual basis can be developed for continuing the claim. See *Donaldson v. Clark*, 819 F2d 1551, 1561 (11th Cir. 1987) (the requirement of Rule 11 of the Federal Rules of Civil Procedure, which imposes a similar requirement that attorneys make a "reasonable inquiry" into the facts and law prior to filing a pleading, "does not preclude plaintiffs from establishing the merits of claims through discovery" and is not intended to discourage an attorney's pursuit of arguable factual or legal theories). Under such circumstances, the attorney's continuing duty under the reasonable inquiry requirement is to pursue discovery or investigation, and, if sufficient support is not developed after a reasonable opportunity for discovery or investigation, then dismiss, withdraw, abandon, or discontinue the claim. Of course, an abusive litigation claim would be appropriate where an attorney files a claim on behalf of a client without any factual or legal support or supported only by guess or sheer speculation, or in cases where a claim having arguable factual or legal support is filed in good faith for the purpose of pursuing discovery, but continued by the attorney after discovery reveals there is no basis for the claim.

In the present case, the facts relied upon by Taylor for filing the adultery counterclaim were provided to him by his client during the pendency of the divorce litigation initiated by Kluge. There is nothing in the record showing that Taylor had any reason to question the truth of the facts. Although the facts clearly did not establish the adultery allegation, they were sufficient for a reasonable attorney to conclude that a colorable inference existed in support of the adultery claim which required investigation or discovery to be developed. Given the time constraints imposed during the pendency of the liti-

gation, and the nature of the claim, it was not feasible for Taylor to conduct a pre-filing investigation. It was reasonable inquiry under the circumstances for Taylor to rely on the facts he obtained from his client, file the adultery counterclaim, and immediately pursue discovery to develop the claim. The record shows that, along with the adultery counterclaim filed on March 3, 1995, Taylor also filed discovery in relation to the counterclaim. Upon receiving Kluge's final discovery response at Renn's deposition on April 14, 1995, and concluding that discovery had generated no additional support for the adultery claim, Taylor announced on the record at the deposition that Renn was abandoning the claim. No further action was taken on the adultery claim, and it was withdrawn on April 28, 1995, by amendment to the pending counterclaim.

Based on this record, we conclude that Taylor acted reasonably under the circumstances, established a good faith defense, and was not liable on the abusive litigation claim. OCGA § 51-7-82 (b). "Although 'the question of reasonableness and unreasonableness is most often a jury issue, in plain and palpable cases the determination may be made by the court.' [Cit.]" *Pakwood Indus. v. John Galt Assoc.*, 219 Ga. App. 527, 529 (466 SE2d 226) (1995). The trial court erred in denying Taylor's motion for summary judgment.[2] See *Ibrahim*, supra at 610-612; compare *Kirsch v. Jones*, 219 Ga. App. 50, 52-53 (464 SE2d 4) (1995).

*Case No. A97A0505*

5. Based on our conclusion in Case No. A97A0506 that Kluge had no viable claim for abusive litigation, there was no basis for concluding that Jerry A. Daniels, P. C. and Jerry A. Daniels, individually were liable. We need not address the specific enumerations of error raised by these parties.

*Judgment affirmed in Case No. A97A0148. Judgment reversed in Case Nos. A97A0505 and A97A0506. McMurray, P. J., and Smith, J., concur.*

DECIDED MAY 27, 1997 —
RECONSIDERATION DENIED JUNE 19, 1997 — 
 Before Judge
Stark.

*Charles A. Mullinax, Glynn R. Stepp*, for Kluge.
*Larry L. Duttweiler*, for Renn.

---

[2] Because Taylor did not raise the issue, we do not address whether or not he could have asserted the settlement between Renn and Kluge in the divorce action as a defense to the abusive litigation claim against him.

*Daniels & Taylor, Jerry A. Daniels*, pro se.
*Wayne A. Bailey*, for Daniels.
*Daniels & Taylor, Tony A. Taylor*, pro se.