A97A2219. KENDRICK v. FUNDERBURK et al.
(498 SE2d 147)

BIRDSONG, Presiding Judge.

Jennifer H. Kendrick appeals the grant of summary judgment to Nelle M. Funderburk, Michael R. Funderburk, and the law firm of Funderburk & Mobley (collectively "the Funderburks") on her claims against them for abusive litigation under OCGA § 51-7-80. Nelle Funderburk represented Kendrick in an EEO complaint against Kendrick's employer; Michael Funderburk and Funderburk & Mobley represented Nelle Funderburk in her lawsuit against Kendrick seeking payment of her legal fees.

Kendrick contends that the trial court erred by finding that no genuine issues of material fact existed on whether the initiation of the Funderburks' action seeking a contingency fee was without substantial justification; erred by finding that there were no genuine issues of material fact on whether the continuation of the action was without substantial justification after Kendrick deposited a check for the amount of the Funderburks' hourly rate bill with the clerk of court; and erred by finding that there were no genuine issues of material fact on whether the Funderburks acted with ill will or wrongful purpose in the action to recover attorney fees as the Funderburks admit they sought to recover a contingency fee which Kendrick contends was a clear violation of the laws of this State.

According to the Funderburks, Kendrick retained Nelle Funderburk to represent her in an employment discrimination complaint under a contingent fee contract, dated December 5, 1992. The entire body of the contract states: "I, *Jenny Kendrick*, Address (not stated), hereby employ, NELLE FUNDERBURK Attorney at Law, to repre-

sent me in the following matter: <u>charge of sexual discrimination, ITT Hartford</u>. I agree to pay my attorney in accordance with the following fee arrangement: <u>25% of any recovery prior to trial, 33% if trial</u>. I understand that the fee is for professional services and does not cover out-of-pocket expenses which I must pay. Expenses of this nature include, but are not limited to, filing fees, witness fees, and fees for copies of essential records." (The underlined matters were handwritten.) Kendrick contends, however, that her original arrangement with Nelle Funderburk called for billing on an hourly basis, and that it was not until December 1993 that she was asked to sign the contingency fee contract.

There is no dispute that Nelle Funderburk was retained to represent Kendrick. After Nelle Funderburk worked on the cases for approximately one year, however, Kendrick allegedly became dissatisfied with Nelle Funderburk's representation, terminated her services, and hired another attorney. Kendrick's letter discharging Nelle Funderburk stated that the contingent fee agreement that Nelle Funderburk caused her to sign differed from the original agreement that was for hourly billing unless suit was filed, the letter "revoked" the contingent fee agreement, and the letter instructed Nelle Funderburk to stop work on the case and to send "a complete accounting of [her] bill to date." Further, Kendrick's deposition testimony denied that she had a legitimate contingent fee arrangement with Nelle Funderburk and, instead, asserted that Funderburk had her sign the agreement while Kendrick was emotionally distressed and when Kendrick did not understand what she was signing.

After receiving the letter discharging her, Nelle Funderburk sent Kendrick a bill for $2,902.50 for the legal services provided through the date Nelle Funderburk's services were terminated. The bill was itemized with dates, description of the work performed and the amount of time spent doing the work up to the date Kendrick ended their relationship, and called for payment of 21.50 hours of legal services at the rate of $135 per hour. Sometime thereafter Kendrick's new attorney advised Nelle Funderburk that Kendrick would pay the bill, and made arrangements to pick up Kendrick's file. When the new attorney attempted to pick up the file, however, Funderburk refused to turn over Kendrick's file without prior payment of the bill. After the complaint was settled, the new attorney informed Nelle Funderburk that the bill would be paid out of the settlement proceeds.

After the settlement, however, Kendrick alleges that Nelle Funderburk refused to accept the amount billed as payment, and, instead, she demanded a $25,000 fee based on the contingency fee contract. The demand stated that the Funderburks considered the contingency fee contract to be a lien against the settlement in the

case and that before the mediation the Funderburks had negotiated a settlement of $125,000 of Kendrick's claim, and consequently the Funderburks claim a fee of $25,000.

When Kendrick refused to pay this amount, the Funderburks subsequently filed suit claiming that they were entitled to $43,750 as their fee. Kendrick's answer to the Funderburks' complaint averred that she had attempted to pay the $2,902.50 bill, and she subsequently deposited the amount of this bill with the clerk. Ultimately, Kendrick moved for summary judgment. Her motion was based in part upon an affidavit from the attorney who represented Kendrick's employer in her discrimination complaint, and that attorney stated that the employer never negotiated a settlement of the complaint with Nelle Funderburk and denied that the employer had made an offer to settle the case as Nelle Funderburk contended.

Subsequently, summary judgment was granted to Kendrick on the Funderburks' claims for attorney fees. The court's order recited that the Funderburks had failed to respond to Kendrick's motion to deposit the $2,902.50 into the registry of the court and also recited that the Funderburks had also failed to respond to Kendrick's motion for summary judgment or to appear at the hearing on the motion. Later, the Funderburks filed a motion seeking to set aside this judgment because they asserted they had not received notice of the motions or the hearing because they had moved their office. The trial court, however, denied the motion because it found the Funderburks at fault as they failed to inform anyone of the office move. After this ruling, the Funderburks withdrew the $2,902.50 from the court.

Subsequently, Kendrick filed this action against the Funderburks alleging that they were guilty of abusive litigation because they filed and continued the previous lawsuit against her. The Funderburks moved for summary judgment contending that the previous action had a sound basis because they were suing for services rendered under the theory of quantum meruit and for breach of the contingency fee contract. The Funderburks contend that their suit was not abusive because Kendrick refused to pay the bill in any amount, including that amount which she acknowledged was legitimately owed, and thus it was necessary to file suit to recover the fee. They also noted that the court in the previous action did not find the suit to be frivolous within the meaning of OCGA § 9-15-14 and had denied Kendrick's motion seeking attorney fees. The trial court in this action found that the prior complaint did allege causes of action under the breach of the contingent fee contract and under quantum meruit and further found that the Funderburks had not committed abusive litigation. After the trial court granted the Funderburks' motion for summary judgment, Kendrick filed this appeal. *Held*:

1. The standards applicable to motions for summary judgment

are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Boulware v. Quiktrip Corp.*, 226 Ga. App. 399 (486 SE2d 662) (1997); *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996).

2. The contingent fee agreement, which the Funderburks rely upon, states that Kendrick agrees "to pay my attorney in accordance with the following fee arrangement: 25% of any recovery prior to trial, 33% if trial." Because Nelle Funderburk's entitlement to a fee for her services is contingent upon "any recovery," she was not entitled to a fee under this agreement since no recovery was obtained while she was still employed. *Sosebee v. McCrimmon*, 228 Ga. App. 705, 706 (492 SE2d 584); *Yetman v. Greer, Klosik &c.*, 225 Ga. App. 397, 399 (1) (483 SE2d 878). Nevertheless, Nelle Funderburk is not without recourse because where a client prevents the contingency from happening, an attorney is entitled to a reasonable attorney fee for the services she rendered on behalf of her client. *Sosebee*, supra at 706-707; *Brookhaven Supply Co. v. Rary*, 131 Ga. App. 310, 311 (205 SE2d 885). Thus, if Nelle Funderburk had a contingent fee contract with Kendrick she could have a remedy in quantum meruit (see *Dorsey v. Edge*, 75 Ga. App. 388, 392 (2) (43 SE2d 425); *Hopkins v. Steele*, 164 Ga. App. 527, 528 (297 SE2d 528)) if she could establish that the services she rendered were received by and had value to Kendrick. *Sosebee*, supra at 707; *Ford v. Smith*, 25 Ga. 675 (3). Further, it is error to rely blindly upon the percentage in the contingency fee agreement in determining this amount. *Sosebee*, supra at 707; *Yetman*, supra at 400.

3. Consequently, the proper issue before the trial court was whether the Funderburks' actions in bringing the prior action to collect under a contingent fee agreement, or demanding a recovery under quantum meruit based solely on the amount of recovery under the contingent fee agreement constituted abusive litigation. OCGA § 51-7-81 provides as follows: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." In this context, a " 'civil proceeding' includes any action, suit, proceeding, counterclaim, cross-claim, third-party claim, or other claim at law or in equity." OCGA § 51-7-80 (1). " 'Malice' means acting with ill

will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." OCGA § 51-7-80 (5). " 'Without substantial justification', when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that such civil proceeding, claim, defense, motion, appeal, or other position is: (A) Frivolous; (B) Groundless in fact or in law; or (C) Vexatious." OCGA § 51-7-80 (7). *Kluge v. Renn*, 226 Ga. App. 898, 902 (487 SE2d 391). The Funderburks as parties and as attorneys representing themselves and in the action against Kendrick are proper defendants in a claim under OCGA §§ 51-7-80 (6) and 51-7-81. Id.

"Although good faith is defined in subjective terms to the extent it refers 'to the best of a person's or his or her attorney's knowledge, information, and belief, formed honestly . . . ,' an attorney cannot establish that he or she acted in good faith by simply asserting a subjective, honest belief that a claim was well grounded in fact and warranted by existing law or by reasonable grounds to believe that an argument for changing the law may be successful. The 'reasonable inquiry' requirement of § 51-7-80 (4) is an objective good faith requirement which qualifies the definition and imposes a duty on attorneys to conduct a reasonable inquiry into the facts and law prior to initiating, continuing, or procuring a claim on behalf of a client. Accordingly, the applicable standard is what would be objectively reasonable for a competent attorney under the circumstances. See 5A C. Wright & A. Miller, Federal Practice & Procedure, § 1335 (2nd ed. 1990) (discussing the standard of 'reasonableness under the circumstances' used to measure attorneys' compliance with similar statutory language in Rule 11 of the Federal Rules of Civil Procedure)." *Kluge v. Renn*, supra at 903-904.

Under *Kluge v. Renn*, the Funderburks had the burden of conducting a reasonable inquiry into the facts and law before initiating or continuing their action to collect the attorney fees, and the standard is what would be objectively reasonable for a competent attorney under the circumstances. "[T]he attorney's continuing duty under the reasonable inquiry requirement is to pursue discovery or investigation, and, if sufficient support is not developed after a reasonable opportunity for discovery or investigation, then dismiss, withdraw, abandon, or discontinue the claim. Of course, an abusive litigation claim would be appropriate where an attorney files a claim on behalf of a client without any factual or legal support or supported only by guess or sheer speculation, or in cases where a claim having arguable factual or legal support is filed in good faith for the purpose of pursuing discovery, but continued by the attorney after discovery

reveals there is no basis for the claim." Id.

In this appeal, based upon the record before us, we cannot conclude that no genuine issues of material fact existed on whether the Funderburks initiated and continued the underlying action against Kendrick based upon a contingency agreement and for an amount which greatly exceeded the amount that they could reasonably anticipate they would be entitled to recover. Although we agree with the trial court that whether an action has a basis in law is a legal issue for the trial court, we do not agree with the trial court's ultimate decision because the determination was based upon disputed factual issues. In granting summary judgment, the trial court seemingly found that there was a contingent fee agreement between Kendrick and Nelle Funderburk. We find, however, that this finding was not authorized because whether there was a legitimate contingent fee agreement was disputed by Kendrick as she asserted the contract was secured by fraud and deception. Therefore, the trial court was not authorized to resolve this issue of fact. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49). Additionally, because the contract was terminated before recovery, Nelle Funderburk had no right to sue on the contract. *Sosebee,* supra; *Yetman,* supra. Moreover, there is evidence in the record which could support Kendrick's assertions that the litigation was based on malice because the Funderburks pursued the action in increasingly higher amounts based upon an agreement which was no longer in effect, relying upon a purported settlement which Kendrick and her former employer denied was ever made, and seeking a fee which was almost 15 times greater than the amount they billed for Nelle Funderburk's service.

Accordingly, the trial court erred by granting summary judgment.

*Judgment reversed. Ruffin and Eldridge, JJ., concur.*

DECIDED MARCH 2, 1998

*Keegan Federal & Associates, R. Keegan Federal, Jr., Carole A. Cox*, for appellant.

*Swift, Currie, McGhee & Hiers, Jeffrey Y. Lewis, John O. Sullivan*, for appellees.

*Nelle M. Funderburk*, pro se.